UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GIUSEPPINA SANSEVERINO,        :
    PLAINTIFFS,             :
                               :
      v.                         :          CIVIL ACTION NO.
                               :          3:11-cv-724 (VLB)
JERRY CHROSTOWSKI, et. al,     :
    DEFENDANTS.           :          OCTOBER 15, 2012

### MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Dkt. #22]

The Plaintiff, Guiseppina Sanseverino, brings this action for monetary relief against Defendant Police Officers Jerry Chrostowski, Joseph Lopa, Gerald Hicks, Michael Farrell, Officer Chmura, and Detective Anderson (collectively referred to herein as the "Defendant Officers").  The Plaintiff brings this action pursuant to 42 U.S.C. §1983, for illegally entering and searching her home and causing damage as a result, in possession of a search warrant that contained false information, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.  The Plaintiff also brings a state law claim for violation of Article I, § 7 of the Connecticut constitution.  Pending before the Court is the Defendant Officers' Motion for Summary Judgment in which Defendants contend that the search of Plaintiff's home and the warrant was supported by probable cause.  For the foregoing reasons, the Court grants Defendants' motion for summary judgment.

### Facts

The following facts relevant to Defendants' Motion for Summary Judgment are undisputed unless otherwise noted.  At all relevant times, Plaintiff and her son, Antonio Sanseverino (referred to herein as "Anthony Sanseverino"), resided at 72 Smalley Street in New Britain. [Dkt. #18, Pl. Amended Complaint; Dkt. #25, Pl. Rule 56 Stmt. ¶4].  On September 30, 2010, Officer Lopa, Officer Farrell, and Officer Hicks were driving together on Smalley Street in New Britain, performing routine mobile surveillance when they observed Omar Sanchez. [Dkt. #22, Ex. B, Lopa Depo, 26:12, 27:14-15].  The warrant affidavit provides that the "Officers observed Omar Sanchez, whom they are familiar with from past marijuana arrests, walking towards the residence of 72 Smalley Street.  Sanchez as observed to approached [sic] the residence and walk up the driveway towards the home.  Moments later Sanchez was observed walking away from the home.  Based on the officers [sic] training and experience the actions observed were consistent with a drug transaction." [Dkt. #22, Ex. A, Arrest Warrant Application ¶8].  Officer Lopa testified in his deposition that he went around the block after seeing Sanchez and parked in the fire station parking lot. [Dkt. #22, Ex. B, Lopa Dep. 31:24-25].

Plaintiff admits that the Officers were conducting surveillance and that at some point observed Omar Sanchez, with whom they were familiar. [Dkt. #25, Pl. Rule 56 Stmt. ¶9].  But Plaintiff denies that the Defendant Officers could see the driveway side of 72 Smalley Street from the fire station parking lot. *Id.*  In support of this contention, Plaintiff submits an affidavit from Anthony Sanseverino in which he attests that "[f]or as long as I have lived there, a fire station has existed

on the corner of Smalley and Stanley streets.  The fire station has a front parking lot and rear parking lot.  I have been in the parking lots many times over the years.  It is not possible to see either the driveway on Hurlburt Street or the entrance of my house on Hurlburt Street from either parking lot of the fire station.  In October of 2010, there was both brickwork, plantings, including trees and bushes that would further obscure anything past the front of the house looking from the direction of the fire station."  [Dkt. #25, Attach 4, Sanseverino Aff., ¶¶2-5].  Plaintiff argues that since the Defendants could not see Sanchez enter or exit the driveway or the entrance to Plaintiff's house from that vantage point, it was not possible for the officers to believe that their observations were consistent with their experience and training that a drug transaction was occurring or had occurred.

The Officers continued to observe Sanchez cross the road and begin walking toward Noble Street. [Dkt. #25, Pl. Rule 56 Stmt. ¶10; Dkt. #22, Ex. A, Arrest Warrant Application ¶9].  Officer Lopa observed Sanchez shoving his hand down the rear of his pants as if he was attempting to conceal something.  *Id.*  The Officers approached Sanchez identifying themselves as New Britain Police. [Dkt. #25, Pl. Rule 56 Stmt. ¶11; Dkt. #22, Ex. A, Arrest Warrant Application ¶9]. Immediately upon observing police presence, Sanchez began yelling "Fuck! Not again." *Id.*  Sanchez began emptying his pockets and throwing the contents of his pockets on the sidewalk.  One of the items Sanchez removed was a clear plastic knot tied baggie containing suspected marijuana (1.5 grams). [Dkt. #25, Pl. Rule 56 Stmt. ¶12; Dkt. #22, Ex. A, Arrest Warrant Application ¶9].  A Dequinois Field

Reagent tester observed a positive reaction for the presence of marijuana (THC). [Dkt. #22, Ex. A, Arrest Warrant Application ¶10].

Defendants assert that Sanchez informed the Officers that he purchased the marijuana from Anthony Sanseverino. Plaintiff disputes as an issue of material fact whether Omar Sanchez made any oral statements incriminating Anthony Sanseverino at the time of his arrest on September 30, 2010. The Defendants maintain that upon arrest, Sanchez spontaneously uttered "Tone just gave me that nick bag for my girl." [Dkt. #22, Ex. A, Arrest Warrant Application]. The Defendant Officers indicated in the warrant affidavit that while at police headquarters Officer Anderson showed Sanchez a photo array containing eight males, was asked to point to a picture of the male that sold him the marijuana, and without hesitation pointed to Anthony Sanseverino stating that he just received the marijuana from him. *Id.*

The Plaintiff has submitted two affidavits from Omar Sanchez in which he denies that he made any statements incriminating Anthony Sanseverino to the Defendant Officers. Sanchez declares in an affidavit dated October 8, 2010 that "[a]t no point have I ever given a statement to any members of the New Britain Police Department that Anthony Sanseverino has or had any illegal contraband in his residence" nor had he given a statement that he "received any illegal contraband from Anthony Sanseverino." [Dkt. #25, Attach 2, 10/8/2012 Aff., ¶¶2-3]. He also attested that in the past the Defendant Officers "have attempted to coerce me into making false statements implicating Anthony Sanseverino in illegal activity." *Id.* at ¶5. In a supplemental affidavit dated April 18, 2012,

Sanchez declares that he did not tell Detective Anderson that Anthony Sanseverino sold him marijuana.  [Dkt. #25, Attach 3, 4/18/2012 Aff., ¶5].  He further declares that "[a]lthough I recall a detective that day showing me a picture of Anthony Sanseverino with some other pictures, he only asked me to identify which one was Anthony Sanseverino.  He never asked me to say that the picture was of the person who gave or sold me marijuana.  I have known Anthony Sanseverino since I was a child, and therefore there was no question I knew what he looked like, and I told this to the detective.  I did not say the picture was of the person who gave or sold me marijuana."  *Id.* at ¶6.

During the month of September 2010, Officer Lopa was contacted by a confidential and reliable informant ("CI"), who stated he/she had information pertaining to a white male trafficking large amounts of marijuana within the City of New Britain. [Dkt. #22, Ex. A, Arrest Warrant Application ¶3].  "The (CI) stated the males name is Tony Sanseverino and he lives at 72 Smalley Street in New Britain, CT."  *Id.*  The CI further stated that "Tony Sanseverino was approximately 25-30 years old."  *Id.*

The warrant affidavit stated that the CI has assisted the New Britain Police Department with past investigations by supplying information pertaining to drug related trafficking within the City of New Britain and making controlled purchases of narcotics, which have resulted in arrests of at least three (3) persons on drug/firearm related charges and the seizure of narcotics on numerous occasions.[1]  [Dkt. #22, Ex. A, Arrest Warrant Application ¶4].  The affidavit also

---

[1] In the warrant affidavit, there appears to be a typographical error in the number of arrests of persons on drug/firearm related charges as a result of the CI's assistance in New Britain Police

indicates that the information "furnished by the CI has been found to be truthful and reliable upon verification through police investigation and corroborated by other independent sources (informants)." *Id.*

It is undisputed that members of the Special Services Unit are familiar with Anthony Sanseverino through past drug investigations and arrests. [Dkt. #22, Ex. A, Arrest Warrant Application ¶5].   The warrant affidavit indicates that Officer Lopa ran a State Police Records Check on Sanseverino and found him to have three (3) drug related convictions and multiple pending at the time that Officer Lopa and Officer Farrell asked for a search warrant of 72 Smalley Street. *Id.*

The Special Services Unit also received multiple anonymous complaints regarding Anthony Sanseverino which indicated that he was selling "large amounts of marijuana and cocaine from this residence at 72 Smalley Street." *Id.* at ¶6.  The anonymous complaints further indicated that Sanseverino deposited his drug proceeds into his parents' bank accounts in an attempt to hide them from police. *Id.*

In addition, on November 17, 2009, members of the Special Services Unit executed "a search and seizure of 72 Smalley Street in New Britain, CT," and identified Sanseverino as he was leaving the bathroom. [Dkt. #22, Ex. A, Arrest Warrant Application ¶7].   As he exited, officers heard the toilet flush and observed a small amount of marijuana floating in the water.  Sanseverino was subsequently arrested. *Id.*

---

Department investigations.  The affidavit states that the CI's information has "resulted in arrests of at least five (3) persons."  In viewing the facts in the light most favorable to the Plaintiff, the Court will assume that the CI has assisted in the arrests of at least three (3) persons on drug/firearm related charges, not five (5).

As a result of the incident on September 30, 2010 including Sanchez's statements, the information from the confidential informant, the anonymous complaints regarding Anthony Sanseverino, the past arrests of Anthony Sanseverino, the past search of 72 Smalley Street coupled with the Officers' training and experience with persons who sell illegal drugs, Judge Strackbein of the Connecticut Superior Court found probable cause and issued a search and seizure warrant for the residence located at 72 Smalley Street on October 1, 2010. [Dkt. #22, Ex. A, Arrest Warrant Application ¶12-13]. The warrant was for the first floor apartment including the finished basement, which is only accessible through this apartment. *Id.*

On October 7, 2010, the Defendants, Chrostowski, Hicks, Farrell, Anderson, Lopa and Chmura were in possession of a search warrant for the Plaintiff's residence located at 72 Smalley Street. [Dkt. #25, Pl. Rule 56 Stmt., at ¶16]. Upon arrival at 72 Smalley Street, Plaintiff asserts that the Defendant Officers used a battering ram to break down the front door, which caused extensive damage to the frame and sheetrock that was adjacent to the door. [Dkt. #25, Pl. Rule 56 Stmt., ¶17]. In opposition to this assertion, Defendant Officers state that they announced their presence outside as New Britain Police Officers, and found the door to be unlocked so that they did not need to use the battering ram in order to enter. [Dkt. #22, Ex. C, Farrell Dep. 47:23-25; Dkt. #22, Ex. L, Chrostowski Dep. 48:19-25, 49:1-4].

After entering the premises, the Officers spread out with some entering the first floor while other Officers went towards the basement. [Dkt. #25, Pl. Rule 56

Stmt., ¶18].   The Officers discovered the basement door locked.   Defendant Chmura announced "police search warrant."   After receiving no response, Defendant Chmura used the battering ram to get into the basement. [Dkt. #25, Pl. Rule 56 Stmt., ¶19].   Officers entered the basement and located Anthony Sanseverino, the target of the investigation, lying on the kitchen floor. Sanseverino was immediately placed under arrest. [Dkt. #25, Pl. Rule 56 Stmt., ¶20].

Plaintiff asserts that the use of the battering ram on the front door as well as the basement door caused extensive damage. [Dkt. #25, Pl. Rule 56 Stmt., ¶17]. Plaintiff also asserts that once inside, the Defendant's engaged in a highly invasive and destructive search of the Plaintiff's residence, causing extensive property damage. [Dkt. #21, Pl. Amended Complaint ¶14].  The Defendant's admit that the basement door was broken, but they deny that any other visible damage occurred as a result of their search. [Dkt. #22, Ex. B, Lopa Dep. 67:15-25, 68:1-3; Dkt. #22, Ex. C, Farrell Dep. 58:10-22; Dkt. #22, Ex. L, Chrostowski Dep 59:2-14]. No contraband was found, and the charges pertaining to the arrest of Anthony Sanseverino were later nolled. [Dkt. #25, Pl. Objection].

<u>Legal Standard</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Fed.R.Civ.P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir.2010). "In determining whether that burden has been met, the court is

required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.,* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir.2006) (internal quotation marks and citation omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.,* No.3:03cv481, 2004 WL 2472280, at *1 (D.Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, No. 3:09cv1341 (VLB), 2011 WL 4396704 at *6 (D. Conn. Sept. 21, 2011).  Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712 (2d Cir. 2010).

Analysis

The Defendant Officers move for summary judgment arguing that the search warrant was supported by probable cause and that they are entitled to qualified immunity.  Plaintiff argues that the search was unlawful because the warrant was supported primarily by the false statements of Sanchez.  Sanchez has stated under oath in an affidavit on October 8, 2010, and then reiterated under oath on April 18, 2012, that he never gave any statement incriminating Anthony Sanseverino to the Defendant Officers.  [Dkt. #25, Pl. Objection to Summary Judgment, at 10].  According to the Plaintiff, because Sanchez denies ever making these statements attributed to him by the Defendants and those statements were necessary to the finding of probable cause, there is a material and disputed fact at issue which precludes summary judgment.

"The existence of probable cause will defeat a claim of … unreasonable search and seizure."  *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012).  "Whether probable cause existed is a question that may be resolved as a matter of law on a motion for summary judgment if there is no dispute with regard to the pertinent events and knowledge of the officer." *Weinstock v. Wilk*, 296 F. Supp.2d 241, 256 (D. Conn. 2003) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 2003)).  "[U]nder both federal and state law, probable cause to search is demonstrated where the totality of the circumstances indicates a 'fair probability that contraband or evidence of a crime will be found in a particular place.'"  *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

"Probable cause is to be assessed on an objective basis." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007).  The Second Circuit has consistently stated that:

> Courts should look to the totality of the circumstances and must be aware that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.

*Fabrikant,* 691 F.3d at 215 (citations omitted). "In assessing probabilities, a judicial officer must look to the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Walczyk*, 496 F.3d at 156 (internal quotation marks and citation omitted).  In sum, probable cause "requires only such facts as make wrongdoing or the discovery of evidence thereof probable." *Id.* at 157.

Reviewing courts properly accord "considerable deference to the probable cause determination of the issuing magistrate." *Walczyk*, 496 F.3d at 157.  "[A] Plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (internal citations omitted).  In fact, "a search based upon a magistrate's determination will be upheld by a reviewing court on less persuasive evidence than would have justified a police officer acting on his own." *U.S. v. Travisano*, 724 F.2d 341, 345 (2d Cir.1983).  "Further, the magistrate's finding of probable cause is itself a substantial factor tending to uphold the validity of this warrant." *Id.* at 345 (internal citations omitted). "This is particularly true in close cases where doubts should be resolved in favor of upholding the warrant." *Id.*

The issuance of a warrant by a neutral magistrate "is presumed reasonable because such warrants may issue only upon a showing of probable cause." *Walczyk*, 496 F.3d at 155-56.   To rebut this presumption and prevail on her Section 1983 claim, the Plaintiff must make "a substantial preliminary showing" that the officer submitting the probable cause affidavit "knowingly and intentionally, or with reckless disregard for the truth, made false statements or material omissions to secure the entry order" and "that the allegedly false statements or material omissions were necessary to the finding of probable cause."   *Southerland v. City of New York*, 680 F.3d 127, 126-27 (2d Cir. 2012) (internal quotation marks and citations omitted).

Even where a plaintiff does make a showing that there were material omissions or false statements, "a court may grant summary judgment based on qualified immunity where the evidence, viewed in the light most favorable to the plaintiffs, discloses no *genuine* dispute that a magistrate would have issued the warrant on the basis of the 'corrected affidavits.'"   *Walczyk*, 496 F.3d at 158. (emphasis in the original).   Under the corrected-affidavit doctrine, "a defendant who makes erroneous statements of fact in a search-warrant affidavit is nonetheless entitled to qualified immunity unless the false statements in the affidavit were necessary to the finding of probable cause." *Southerland v. City of New York*, 680 F.3d 127, 143 (2d Cir. 2012) (internal quotation marks and citation omitted).   "In order to determine whether false statements were necessary to the finding of probable cause, the court must put aside allegedly false material, supply any omitted information, and then determine whether the contents of the

corrected affidavit would have supported the finding. In applying the corrected-affidavit doctrine, qualified immunity is warranted only if, after correcting for the false or misleading statements, the affidavit accompanying the warrant was sufficient to support a reasonable officer's belief that probable cause existed." *Id.* at 143-44 (internal quotation marks, citation and alterations omitted).

This Court assumes for purposes of analyzing the Defendant Officers' qualified immunity defense that the Officers falsely stated in the search warrant affidavit that Sanchez made incriminating statements regarding Anthony Sanseverino.  The corrected-affidavit doctrine requires that this Court put aside these statements by Sanchez and then consider whether the contents of the corrected affidavit would have supported a finding of probable cause.

Plaintiff argues that Sanchez's oral statements on September 30, 2010, including the photo array incident back at police headquarters, was necessary to find probable cause for the issuance of the search warrant.  However even when viewing the facts in the light most favorable to the Plaintiff, the contents of the corrected affidavit would clearly support a reasonable officer's belief that probable cause existed for the search warrant.

A reasonable officer would believe there was a fair probability that contraband or evidence of a crime would have been found at 72 Smalley Street based on the following information even in the absence of Sanchez's incriminating statements: (1) the statements made by the confidential and reliable informant; (2) the past drug investigations and arrests of Anthony Sanseverino; (3) the multiple anonymous complaints that Anthony Sanseverino was selling

large amounts of marijuana and cocaine from 72 Smalley Street; (4) the prior search and seizure of 72 Smalley Street on November 17, 2009, where Anthony Sanseverino was found flushing what appeared to be marijuana down the toilet; and (5) the observation and subsequent arrest of Omar Sanchez for possession of marijuana on September 30, 2010 at 72 Smalley Street.

First, the Defendant Officers were contacted during the month of September 2010 by a confidential and reliable informant that stated Anthony Sanseverino was trafficking large amounts of marijuana at 72 Smalley Street. [Dkt #22, Ex. A, ¶3-4].  "The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable. Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of providing reliable information, or if it is corroborated in material respects by independent evidence."  *U.S. v. Rodriguez*, No. 3:11cr12, 2011 WL 2470714, at *10 (D. Conn. Jun 20, 2011) (citing from *United States v. Wagner,* 989 F.2d 69, 72–73 (2d Cir.1993)).  "In determining what constitutes probable cause to support a search warrant when the warrant is based upon information obtained through the use of a confidential informant, courts assess the information by examining the 'totality of the circumstances' bearing upon its reliability." *U.S. v. Smith*, 9 F.3d 1007, 1012 (2d Cir.1993).

It is well established that probable cause to issue a warrant can be predicated on the information provided by a credible and reliable informant. *See, e.g., Bancroft v. City of Mount Vernon* 672 F.Supp.2d 391, 402 (S.D.N.Y 2009)

(holding that "reliance on information from a single confidential informant whom the police and the magistrate deem credible is enough to support a finding of probable cause."); *Warren v. Williams,* No. Civ.A. 304CV537(JCH), 2006 WL 860998, at *16 (D. Conn. Mar. 31, 2006) ("The reliability of information provided by a confidential informant can be established if the person providing the information has a track record of providing reliable information....") (internal quotations and citation omitted); *United States v. Wagner,* 989 F.2d at 72–73  ("If a substantial amount of information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that he provides, though uncorroborated, is also reliable."); *U.S. v. Rivera*, 465 F.Supp. 402, 408 (S.D.N.Y. 1979) (holding that information provided by confidential informant that lead to at least one arrest and one narcotic's buy in the past was sufficient to demonstrate credibility).   Further, "information from a known informant, as opposed to an anonymous tipster, is generally entitled to more credence."   *U.S. v. Peoples*, No.111CR390A, 2012 WL 3993893, at *4 (W.D.N.Y. Aug. 7, 2012) (citation omitted).

Here, the information provided by the confidential informant is sufficiently reliable to support a probable cause finding as the informant had a track record of providing reliable information and the information had been corroborated in material respects by independent evidence.  First, the confidential informant had assisted the New Britain Police Department with past investigations by supplying information pertaining to drug related trafficking within the City of New Britain and making controlled purchases of narcotics.  These investigations, which were

assisted by the CI, have resulted in arrests of at least three persons on drug/firearm related charges and the seizure of narcotics on numerous occasions. *See* [Dkt. #22, Ex. A, ¶4]. In addition, the information provided by the informant that drugs were being sold from 72 Smalley Street by Anthony Sanseverino was corroborated by the anonymous complaints, the past drug investigations and arrests of Anthony Sanseverino, the past search of 72 Smalley Street and the arrest of Sanchez at 72 Smalley Street.

Plaintiff argues in a footnote that the Defendants "do not claim that the information from their confidential informant would be sufficient under *Illinois v. Gates*, 462 U.S. 213 (1983)" as the "CI did not indicate any personal knowledge about the plaintiff's home or specific basis for his or her tip." [Dkt. #25, Summary Judgment Mem., p. 10 n.3]. In *Illinois v. Gates*, the Supreme Court adopted "a totality of the circumstances approach to determining whether an informant's tip establishes probable cause, whereby the informant's veracity, reliability, and basis of knowledge are highly relevant." *Alabama v. White*, 496 U.S. 325, 325-6 (1990) (citing *Illinois v. Gates*, 462 U.S. at 230). The Supreme Court "indicated that where an informant provides information about certain criminal activities but does not specify the basis for his knowledge, a finding of probable cause based on that information will not be upheld unless the informant is 'known for [his] unusual reliability.'" *Arizona v. Evans*, 514 U.S. 1, 17 (1995) (quoting *Illinois v. Gates*, 462 U.S. at 233).

However, the Supreme Court unequivocally held that "[p]atrial corroboration of an informant is a circumstance that, on totality review, may allow

a judicial officer to credit the informant's whole account." *U.S. v. Clark*, 638 F.3d 89, 98 (2d Cir. 2011) (citing *Illinois v. Gates*, 462 U.S. at 237-8). Therefore "[w]hen the informant's tip, standing alone, lacks sufficient indicia of reliability because it does not do enough to establish the informant's basis of knowledge and veracity, it may still support a finding of reasonable suspicion [or probable cause] if sufficiently corroborated through independent police investigation." *U.S. v. Elmore*, 483 F.3d 172, 129 (2d Cir. 2007); s*ee also United States v. Wagner*, 989 at 73 ("Even where an informant has no proven record, if an informant's declaration is corroborated in material respects, the entire account may be credited, including parts without corroboration.").   As discussed above, the information from the confidential informant was corroborated in material respects by other independent evidence and police investigation.  In line with the Supreme Court's decision in *Illinois v. Gates* and its progeny, the totality of the circumstances here demonstrate that the CI's information was sufficiently reliable despite the fact that the warrant affidavit did not explain the basis for the informant's knowledge due to the corroboration of the information by independent sources and the informant's track record of providing credible information.

Second, the information concerning Anthony Sanseverino's past arrests and the prior search of 72 Smalley Street on November 17, 2009, where Anthony Sanseverino was found flushing what appeared to be marijuana down the toilet also provides a basis for finding probable cause.  "The use of prior arrests and convictions to aid in establishing probable cause [for the issuance of a search warrant] is not only permissible, but is often helpful. This is especially so where,

as in the matter presently before the court, the previous arrest or conviction involves a crime of the same general nature as the one which the warrant is seeking to uncover." *U.S. v. Conley*, 4 F.3d 1200, 1207 (3d. Cir.1999) (internal citations omitted).   The Second Circuit has stated that "the fact that, in determining probable cause, a judicial officer may take into account a prior similar arrest is not error." *U.S. v. Jakobetz*, 955 F.2d 786, 803 (2d Cir.1994) (citing *United States v. Harris,* 403 U.S. 573, 582, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971)).

In this case, the warrant affidavit stated that the members of the Special Services Unit were familiar with Anthony Sanseverino through past drug investigations and arrests. [Dkt. #22, Ex. A, ¶5].   Officer Lopa ran a State Police Records check on Anthony Sanseverino and found him to have three drug related convictions and multiple pending at the time the warrant was issued. *Id.*   In addition, the Defendant Officers knew that on November 17, 2009, the Special Services Unit executed a search of 72 Smalley Street, and found Anthony Sanseverino flushing marijuana down the toilet. [Dkt. #22, Ex. A, ¶7].   A reasonable officer would believe that Anthony Sanseverino's past arrests and the prior search of 72 Smalley Street would help to further establish probable cause to search 72 Smalley Street.

Third, the Special Services Unit received multiple anonymous complaints regarding Anthony Sanseverino stating that he was selling large amounts of marijuana and cocaine from his residence at 72 Smalley Street. [Dkt. #22, Ex. A, ¶6].   The Second Circuit has acknowledged that "[a]nonymous tips suffice to

establish probable cause if they are corroborated by independent police work." *U.S. v. Fama,* 38 Fed.Appx. 70, 72 (2d Cir.2002) (Surveillance of defendant's apartment based on anonymous tips, coupled with a positive identification of two cars associated with the defendant and with the bank robbery in which the defendant was a suspect, was sufficient to establish probable cause to issue a warrant).

The Plaintiff argues in a footnote that the anonymous complaints fail to establish probable cause relying on the Supreme Court's opinion in *Florida v. J.L.,* 529 U.S. 266 (2000).  The Plaintiff argues that the Defendants fail to offer "any particularized information or knowledge that would permit a finding of probable cause without Sanchez" as the complaints where from anonymous individuals. [Dkt. #25, Def. Summary Judgment Mem., p. 10n.3].  The Plaintiff's reliance on this case is somewhat misplaced.  In *Florida v. J.L.,* the Supreme Court considered "whether an anonymous tip that a person is carrying a gun is, without more, sufficient to justify a police officer's stop and frisk of that person."  529 U.S. at 268.  The Supreme Court explained that "there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Id.* at 270 (internal quotation marks and citation omitted).  Although the Supreme Court's decision in *Florida v. J.L.* was predicated on reasonable suspicion to make a Terry Stop, its holding has been applied to probable cause determinations.  As noted above, an anonymous tip will suffice to establish probable if corroborated by independent police work.  *U.S. v. Fama,* 38 at 72; *United States v. Elmore,* 482 F.3d 172, 179 (2d

Cir. 2007) ("Even a tip from a completely anonymous informant-though it will seldom demonstrate basis of knowledge and the veracity of an anonymous informant is largely unknowable-can form the basis of reasonable suspicion or probable cause if it is sufficiently corroborated.") (citation omitted).   As discussed above, the anonymous tips were corroborated by independent police work and evidence such as the information from the confidential informant, the past drug investigations and arrests of Anthony Sanseverino, the past search of 72 Smalley Street and the arrest of Sanchez at 72 Smalley Street.

Lastly, a reasonable officer would believe there was probable cause for a search warrant based on the Defendant Officers' observations of Sanchez and his subsequent arrest for possession of marijuana at 72 Smalley Street.  Here, the Plaintiff tries to create a genuine issue of material fact in dispute by arguing that that it was not possible for the Defendant Officers to see Sanchez enter or exit 72 Smalley Street because there were "bushes, trees and brickwork."  [Dkt. #25, Mem. in Opp. to Summary Judgment. 11].  The Plaintiff appears to be suggesting that because the Officers could not see Sanchez enter or exit the residence, the statement in the warrant affidavit that the Officers observed Sanchez "walk up the driveway towards the home" was either false or misleading.

However, Plaintiff's evidence that the Officers could not have seen Sanchez walk up the driveway or enter the residence is based on Anthony Sanseverino's conjecture that the bushes, trees and brickwork must have obstructed the Officer's view of both the driveway and entrance of 72 Smalley Street from the fire department parking lot where they were parked.  It is well established that on

summary judgment the "moving party bears the initial burden of providing the basis for the motion and of identifying the evidentiary materials, if any, supporting the moving party's position.  The non-moving party must then come forward with specific facts showing that there is a genuine issue for trial. Mere speculation and conjecture will not suffice." *Brandon v. City of New York*, 705 F.Supp. 2d 261, 268 (S.D.N.Y. 2010) (internal quotation marks and citations omitted).   In this case, Plaintiff's assertion that it was impossible for the Defendant Officers to see Omar Sanchez walk up and down the driveway of or enter 72 Smalley Street is pure conjecture and therefore fails to create a material issue of fact in dispute.

Furthermore, the warrant affidavit does not actually state that the Officers observed Sanchez enter and exit 72 Smalley Street but rather they observed him in the immediate vicinity of the driveway and entrance to the home and inferred from their observations that he entered and shortly thereafter exited 72 Smalley Street.  Even if the Court corrected the warrant to exclude the allegedly false or misleading statement the Officers observed Sanchez "walk up the driveway towards the home" a reasonable officer would still believe that probable cause existed on the basis of the corrected affidavit.  The content of the corrected affidavit would therefore broadly provide that the Defendant Officers observed Sanchez approaching 72 Smalley Street and that although they lost sight of Sanchez as he progressed up the driveway of 72 Smalley Street they observed him moments later walking away from 72 Smalley Street.  The Officers then observed Sanchez as he was walking down Noble Street shoving his hand down

the rear of his pants as if he was attempting to conceal something.  When Sanchez observed the Officers he emptied his pockets throwing all the contents on the sidewalk including a clear plastic knot tied baggie containing suspected marijuana which a Dequinois Field Reagent tester showed a positive reaction for the presence of marijuana.

A reasonable officer would believe there was a fair probability that contraband or evidence of a crime would be found at 72 Smalley Street on the basis of the Officers' observations and arrest of Sanchez for possession of marijuana at 72 Smalley Street despite their inability to see Sanchez actually progress up the driveway and enter the residence in conjunction with the information provided by the confidential information, the multiple anonymous complaints and the past drug investigations and arrests of Anthony Sanseverino including the prior search of 72 Smalley Street on November 17, 2009. Consequently, Sanchez's statements incriminating Anthony Sanseverino and the Officers' statement in the affidavit that they observed Sanchez walk up the driveway into 72 Smalley Street are not necessary to the finding of probable cause.

Even if the Officers had never observed and arrested Sanchez on September 30, 2010, a reasonable officer would still believe there was a fair probability that contraband or evidence of a crime would be found at 72 Smalley Street solely on the basis of the information provided by the confidential information who had a proven track record, the multiple anonymous complaints regarding Anthony Sanseverino selling large amounts of marijuana and cocaine

from 72 Smalley Street and the past drug investigations and arrests of Anthony Sanseverino including the prior search of 72 Smalley Street on November 17, 2009, where Anthony Sanseverino was found flushing what appeared to be marijuana down the toilet.  Indeed, courts have found that probable cause can be predicated on the "information from a single confidential informant whom the police and the magistrate deem credible is enough to support a finding of probable cause" *Bancroft*, 672 F.Supp.2d at 402; *see also Lynch ex. Rel. Lynch v. City of Mount Vernon*, 567 F.Supp.2d 459, 466 (S.D.N.Y. 2008) (noting that there was no authority holding that "reliance on information provided by a single confidential informant whom the police and issuing magistrate deem credible is not enough to create probable cause").

Plaintiff devotes a significant portion of her motion in opposition to summary judgment arguing that the Defendant Officers offer contradictory evidence about the circumstances of Sanchez's arrest.  [Dkt. #25, p. 10-11]. Plaintiff points to Officers Lopa, Farrel and Hicks' deposition testimony which provide somewhat conflicting accounts of where the Officers were located when they first spotted Sanchez on Smalley Street.  *Id.*  Plaintiff contends that Farrel testified that he was with only with Lopa and parked in the fire station parking lot when Lopa observed Sanchez while Lopa testified that he was driving on Smalley Street when he spotted Sanchez and only parked in the fire department lot after observing Sanchez walk towards the side door.  *Id.*  Lastly, Plaintiff contends that Hicks testified that he was alone with Lopa and did not see Sanchez enter 72 Smalley Street nor did any of the other officers tell him that they saw Sanchez go

into the residence. *Id.* However, Officer Lopa also testified that he was uncertain when he first observed Omar Sanchez but "saw him coming from that location." [Dkt. 22, Ex. M. Hicks Dep., p. 14]. Although, the Plaintiff is correct that these accounts differ, it is unclear what statements in the warrant affidavit were either false or materially omitted on the basis of Lopa, Farrel and Hicks' "conflicting" deposition testimony. As discussed above, even if the Court corrects the affidavit to remove any mention of the Officers' observations and arrest of Sanchez all together, a reasonable officer would still believe that probable cause existed based on the content of the corrected affidavit.

Even where the evidence is viewed in the light most favorable to the Plaintiff, there is no genuine dispute that a magistrate would have issued a warrant on the basis of the corrected affidavit as a reasonable officer would believe that probable cause existed even in the absence of the information pertaining either to Sanchez's incriminating statements or the Officer's observations of Sanchez walking up the driveway and entering 72 Smalley Street. Consequently, summary judgment is appropriately granted because the Defendant Officers are entitled to qualified immunity under the corrected-affidavit doctrine. [2]

---

[2] The Defendants erroneously argue that the "Police Officers are not liable for violation either of the Fourth or of the Fourteenth Amendment unless their conduct goes beyond recklessness and is so arbitrary that it is 'shocking to the conscience'" citing *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). [Dkt. #22, Def. Motion for Summary Judgment, p. 21-22]. The "shocking to the conscience" standard articulated in *County of Sacramento* applies to substantive due process claims under the Fifth Amendment not the Fourth Amendment. Because the Plaintiff has not brought a substantive due process claim in her amended

Having granted summary judgment as to the federal law claim against the Defendants on the basis of qualified immunity, the Court declines to exercise its supplemental jurisdiction over the Plaintiff's state constitutional law claim.  "Supplemental or pendent jurisdiction is a matter of discretion, not of right.  Thus, the court need not exercise supplemental jurisdiction in every case." *Nicholson v. Lenczewski*, 356 F.Supp.2d 157, 165-66 (D. Conn. 2005) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 715-26 (1966)).  "The federal court should exercise supplemental jurisdiction and hear a state claim when doing so would promote judicial economy, convenience and fairness to the litigants. The court should decline to exercise supplemental jurisdiction, however, when state law issues would predominate the litigation or the federal court would be required to interpret state law in the absence of state precedent. In addition, the court may decline to exercise supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction." *Id.* (citing 28 U.S.C. § 1367(c)(3)); *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims").  Here, the Court has not had occasion to, and thus has not ruled on any prior substantive motions and therefore has not developed familiarity with any of the state law issues in this

---

complaint, *see* [Dkt. #21], the Defendants' arguments in this regard are entirely irrelevant to this Court's analysis.

case.   Moreover, the remaining state law claim involves a state constitution law question which is best resolved by a state court.  *See Horton v. Town of Brookfield,* No.CIV.A.3:98CV01834, 2001 WL 263299, *9 (D.Conn. March 15, 2001) (claims involving issues of state constitutional law "are better decided by the state courts").  Since the remaining claim is purely a state law claim, the Court declines to exercise jurisdiction over this claim.  This claim is dismissed without prejudice to pursuing in state court.

<u>Conclusion</u>

For the foregoing reasons, the Court GRANTS Defendants' [Dkt. #22] motion for summary judgment on Plaintiff's federal law claim and dismisses without prejudice to pursuing in state court Plaintiff's state law claim.  The Clerk is directed to enter judgment in favor of Defendants on the federal law claim and close the case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: October 15, 2012